# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **CONTINENTAL MATERIALS CORPORATION,** | ) ) ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) |
| | ) |
| **AFFILIATED FM INSURANCE COMPANY,** | ) ) ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Continental Materials Corporation ("Continental") for its Complaint against Defendant Affiliated FM Insurance Company ("Affiliated FM") alleges as follows:

## INTRODUCTION

1. Continental brings this action for declaratory judgment, damages, and statutory damages with respect to benefits due, but unreasonably withheld, under a first-party property insurance policy (the "Policy") issued by Affiliated FM to Continental for losses arising on or about December 2, 2008, as a result of a landslide that buried, obliterated, and otherwise caused the immediate cessation of all mining activities at the Pikeview Quarry in Colorado Springs, Colorado. Affiliated FM has, to date, refused to pay Continental's claim for loss and benefits under the Policy, despite the Policy's terms providing Continental with coverage for, *inter alia,* property damage, earth movement, debris removal and business interruption.

## THE PARTIES

2. Continental is a Delaware Corporation headquartered in Chicago, Illinois that includes mining in its operations and, to that end, its subsidiaries own and operate a limestone quarry in Colorado Springs, Colorado known as the Pikeview Quarry.

3. Based on information and belief, Affiliated FM is a Rhode Island corporation headquartered in Johnston, Rhode Island. Affiliated FM is an insurance company that sold the Policy to Continental.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction in accordance with 28 U.S.C. §1332. There is complete diversity of citizenship because Continental is a Delaware corporation headquartered in Chicago, Illinois and Affiliated FM is a Rhode Island corporation headquartered in Johnston, Rhode Island. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2) because this District is where "a substantial part of the events . . . giving rise to the claim occurred" and "a substantial part of property that is the subject of the action is situated . . . ."

## FACTUAL BACKGROUND

6. Throughout its ownership and at all relevant times up to and including December, 2008, the Pikeview Quarry was an actively mined limestone and aggregates quarry in Colorado Springs, Colorado. The Pikeview Quarry is owned by Castle Concrete Co. and was operated by Transit Mix Co., both of which are wholly owned subsidiaries of Continental.

7. The Pikeview Quarry is an improvement to real property as the Quarry is a man-made structure that has enhanced the value and utility of the property.

8. Continental made permanent improvements to the Pikeview Quarry through a reclamation process that began by creating benched steps on or before 1990. The benched steps provided the Quarry with stable slopes that were intended to last beyond the duration of the actual mining activities.

**A.  THE LOSS**

9. On December 2, 2008, a landslide occurred at the Pikeview Quarry. The landslide buried or obliterated the Pikeview Quarry. As a result, Continental was forced to suspend operations at the Pikeview Quarry immediately after the landslide.

10. Moreover, the landslide buried or obliterated the limestone benches and damaged the structural integrity of the geologic formation. Consequently, Continental will have to begin reclamation of the Quarry a second time, increasing Continental's costs of reclamation to in excess of $6 million.

11. No mining at the Pikeview Quarry has taken place since the December 2, 2008 landslide.

12. After the landslide closed the Pikeview Quarry, both the Mining Safety and Health Administration ("MSHA"), a division of the U.S. Department of Labor, and Division of Reclamation, Mining and Safety ("DRMS"), a division of the Department of Natural Resources of the State of Colorado concurred with Continental that all mining activities should cease and so ordered.

13.     To cover the loss of inventory and operating losses incurred from the landslide's closure of the Pikeview Quarry, Continental re-opened another quarry owned and operated by Continental (the "Black Canyon Quarry") in 2009 which is located roughly ten miles from the Pikeview Quarry.  As a result, Continental incurred certain start-up expenses.

14.     Continental also procured limestone and other rock from its aggregate producers in southern Colorado and other third-parties.  As a result, Continental incurred certain extra expenses, including hauling expenses and the cost of sourcing inventory from these third parties.

15.     The Pikeview Quarry remains buried in debris from the landslide.

### B.     AFFILIATED FM'S POLICY AND THE OCCURRENCE

16.     Affiliated FM drafted and sold to Continental first-party property insurance policy no. EI587, with a policy period from August 15, 2008 to August 15, 2009 (the "Policy").  Renewals of the Policy remain in effect.  The Policy is attached as Exhibit A.

17.     Continental timely prepaid the Policy's $180,200.00 premium for $200,000,000.00 in Policy Limits per occurrence, with a $20,000,000 per occurrence sub-limit for losses resulting from Earth Movement.

18.     The landslide took place on December 2, 2008, within the applicable policy period.  See Ex. A, Declarations § A, p. 1.

19.     The Named Insured for the Policy is defined as Continental, its wholly owned subsidiaries, and any interest which may now exist or hereinafter be created or acquired which is owned, controlled or operated by anyone or more of these named insureds.

20.     A subsidiary of Continental owned the Pikeview Quarry during the policy period and is therefore covered under the Policy.  Exhibit A, Declaration, § B, p. 1.

21.     The Policy covers all risks of loss or damage to real property, personal property and business interruption, including the applicable extensions of coverage, at the following described location:

> …(11.)     7250 Allegheny Drive, Colorado Springs, CO 80919, Index No. 001228.80; …

Ex. A, Declarations, § D, p. 1.

22.     The Pikeview Quarry is located at 7250 Allegheny Drive, Colorado Springs, Colorado 80919, Index No. 001268.80, and is therefore a covered property under the Policy.

23.     Damage to Pikeview Quarry is covered under the Policy from all risks of direct physical loss or damage, unless otherwise excluded under the Policy.

24.     The Policy also covers damage to personal property, raw materials, and stock, as those or related terms are defined in the Policy.

25.     Continental suffered a loss of personal property, raw materials, and stock, and those losses are covered under the Policy.

26.     The Policy also insures "real property," which in addition to its plain dictionary meaning as being land, including buildings and improvements on it and its natural assets, includes "new construction; additions under construction; alterations and repairs to buildings or structures; temporary structures…". Ex. A, All Risk Coverage Form, § B(1)(b), p. 1.

27.     The cost of repairing the Quarry including the Quarry bottom is a covered cost under the Policy.

28.     The cost of repairing or replacing the benched steps, otherwise providing the Quarry with a stable slope, and the increase in reclamation costs, is covered under the Policy.

29. The Policy covers liability for loss or change caused by Earth Movement. Ex. A, All Risk Coverage Form, § C (1)(a), p. 2.

30. The Policy defines "Earth Movement" as any natural or man-made earth movement including but not limited to earthquake, landslide, mudflow, subsidence and earth sinking, rising or shifting that results from, contributes to, or is aggravated by any of the above. Ex. A, Definitions, p. 26.

31. The December 2, 2008 landslide constitutes Earth Movement, as defined under the Policy, and all loss or change resulting from the December 2, 2008 landslide is covered under the Policy.

32. The Policy covers the reasonable and necessary expense of debris removal remaining as the direct result of physical damage insured by the Policy to the insured property. Ex. A, All Risk Coverage Form, § C (1)(a), p. 3.

33. The cost of debris removal from the Pikeview Quarry resulting from the December 2, 2008 landslide is a covered cost under the Policy.

34. The Policy covers the reasonable fees paid to (a) auditors; (b) accountants; (c) architects; (d) engineers or (e) other professionals.

35. Occurrence, as defined in the Policy as it relates to Earth Movement, means the sum total of all loss or damage of the type insured, including any business interruption loss, arising out of or created by all earth movement(s) during a continuous period of 72 hours. Ex. A, Definitions, p. 27.

36. The Pikeview Quarry 2008 landslide constituted one occurrence under the Policy.

37. The Business Interruption-Extensions Coverage Sub-Limits include (A) 365 days of ordinary payroll; (D) $2,000,000 contingent business interruption; and (I) 180 days of extended period of indemnity. Ex. A, Declaration, § F, p. 3.

### C. BUSINESS INTERRUPTION ENDORSEMENT

38. The Policy is also extended to cover the actual loss sustained by the Insured due to the necessary interruption of business operations during the period of Indemnity of the following: (A) Gross Profits, Rents and the Increased costs of doing business and (B) Extra Expenses directly resulting from direct physical loss or damage insured by the Policy to insured property. Ex. A, Business Interruption Endorsement ("BI Endorsement")

39. Under the BI Endorsement, the Affiliated FM will consider an amount recovered elsewhere under the Policy to loss or damage to: (a) finished goods or (b) merchandise as if sold to the Insured's regular customers.

40. Under the BI Endorsement, the period of indemnity is the period from the time of direct physical loss or damage and "[e]nding no later than twelve (12) months (or as amended in the declaration section) thereafter during which period sales or rents are directly affected by such loss or damage…". Ex. A, BI Endorsement, § 3(A)(1) and (2).

41. The Policy is extended to cover business interruption where "access to the location" is prohibited by order of civil authority. The sublimit period of indemnity for coverage for civil authority is 30 days. Ex. A, BI Endorsement, §B; p. 3; Declarations, BI, p. 3.

42. Accordingly, the business interruption losses resulting from the landslide's immediate closure of the Pikeview Quarry are covered by the Policy.

E.     **CONTINENTAL'S INSURANCE CLAIM**

43.    Continental timely provided Affiliated FM notice of its losses arising from the Pikeview Quarry landslide and timely filed a claim for coverage for losses arising from the Pikeview Quarry landslide.

44.    Continental has satisfied all conditions precedent for obtaining coverage, or Affiliated FM has waived compliance with those conditions or is estopped from requiring the fulfillment of the conditions precedent.

45.    Affiliated FM has denied coverage for all or portions of Continental's claim without a reasonable basis. Even though the Policy specifically covers real property (land and improvements thereon), Affiliated FM contends that land at the Pikeview Quarry and even Pikeview Quarry itself are not covered under the Policy.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment of Scope of Contractual Obligations)

46.    Continental incorporates by reference of the allegations of Paragraph 1 through 45 above, as though set forth fully herein.

47.    The Policy constitutes a binding contract between Continental and Affiliated FM.

48.    An actual controversy has arisen and now exists between Affiliated FM and Continental relating to the rights and liabilities of the parties under the Policy in connection with the December 2, 2008 landslide at the Pikeview Quarry.

49.    A declaratory judgment is necessary because Continental contends and Affiliated FM denies that Continental's losses are fully covered under the Policy.

8

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

50. Continental incorporates by reference of the allegations of Paragraph 1 through 49 above, as though set forth fully herein.

51. Affiliated FM has breached its contract of insurance by failing to reimburse or indemnify Continental for losses resulting from the Pikeview Quarry landslide and which are covered under the Policy.

52. Affiliated FM's breach of the insurance contract (Policy) has damaged Continental.

## THIRD CLAIM FOR RELIEF
### (Statutory Relief Pursuant to Colorado Revised Statute § 10-3-1115 and § 10-3-1116)

53. Continental incorporates by reference of the allegations of Paragraph 1 through 52 above, as though set forth fully herein.

54. Affiliated FM unreasonably delayed and/or denied payment of Continental's claim for benefits under the Policy and lacked any reasonable basis for doing so.

55. Through Affiliated FM's unreasonable actions, Continental is entitled to statutory relief resulting from Affiliated FM's violation of Section 10-3-1115 of the Colorado Revised Statutes. As a result of that violation, Continental is entitled to damages from Affiliated FM, including damages equal to two times the covered benefit, as well as reasonable attorneys' fees and court costs.

## **PRAYER**

WHEREFORE, Continental respectfully requests this Court enter judgment in its favor as follows:

    A.    A declaration that Continental's losses are covered under the Policy;

    B.    Compensatory damages under the Policy to be proved at trial;

    C.    Statutory relief under Colorado Revised Statute §§ 10-3-1115 and 1116, including damages equal to two times the covered benefit, as well as reasonable attorneys' fees and court costs;

    D.    for all pre- and post-judgment interest allowed by law;

    E.    for reasonable attorneys' fees, expenses, expert witness fees, and court costs as otherwise permitted by law; and

    F.    for such other and further relief, including punitive damages, as the Court may deem just and proper under the circumstances of this case.

Plaintiff demands a trial to the jury on all issues so triable.

Dated this 29th day of November, 2010

          *s/ L. Norton Cutler*
          L. Norton Cutler
          Attorney for Plaintiff
          Perkins Coie LLP
          1899 Wynkoop Street, Suite 700
          Denver, CO  80202
          Telephone: (303) 291-2300
          Facsimile: (303) 291-2400
          Email: ncutler@perkinscoie.com

Theodore R. Tezlaff
Attorney for Plaintiff
Ungaretti & Harris, LLP
3500 Three First National Plaza
Chicago, IL 60602
Phone: (312) 977-4400
Email: trtezlaff@uhlaw.com
*Pro hac vice to be applied for*

**Plaintiff's Address:**
Continental Materials Corporation
200 South Wacker Drive, Suite 4000
Chicago, Illinois 60606

11