IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge John L. Kane**

Civil Action No. **10-cv-02900-JLK-KLM**

**CONTINENTAL MATERIALS CORPORATION,**

    Plaintiff,

v.

**AFFILIATED FM INSURANCE COMPANY,**

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION (DOC. 49)
FOR PARTIAL SUMMARY JUDGMENT**

**Kane, J.**

This insurance coverage dispute arose after a landslide damaged a limestone quarry owned by Plaintiff Continental Material Corporation ("Continental"). While it appears the landslide affected an area of the quarry that was no longer being mined, the entire quarry was declared geologically unstable and the Mine Safety and Health Administration (MSHA) ordered it closed. It remains closed to date.

At the time of the landslide, Continental was insured under an "all-risks" insurance policy underwritten by Affiliated FM Insurance Company ("Affiliated"), which included coverage – subject to certain limitations and exclusions – for property damage related to "earth movement." One of those exclusions was for damage to "land, water, or any substance in or on land." Deeming the damage reported as damage to "land," Affiliated initially denied the entirety of Continental's $2.5M claim for business interruption and

extra expenses related to the landslide. Affiliated later agreed to a small payment for 20,000 tons of previously-extracted limestone that had been sitting on pallets at the site and buried by the landslide, deeming it personal property in the form of "stock in process" at the time of the incident. Affiliated also offered to pay for any business interruption costs associated with Continental's inability to use or sell that stock while its cement operations were on hold in the wake of the slide. Continental's claim that "millions of tons" of rock that remained in the ground at the quarry was lost personal property in the form of "raw materials" under the Policy – and compensable at replacement cost – was, predictably, denied. According to Continental, Affiliated also denied clean up and remediation costs associated with restoring the quarry to operable condition. Continental originally estimated the latter at a minimum of $6 million, but the number has gone up significantly based on input from state and federal mine safety regulators.

 Continental filed suit, seeking declaratory judgment as to the scope of Affiliated's coverage obligations under the policy, damages for breach of the insurance contract, and statutory damages for unreasonable delay and bad faith under C.R.S. §§ 10-3-1115 and 1115. Continental moved for partial summary judgment before the discovery cut-off date, seeking a legal determination that (1) the Pikeview Quarry is an engineered improvement to real property and not "land" within the meaning of that term in the Policy; (2) the unextractable limestone is "Personal property," and specifically "Raw materials," as that therm is used in the Policy; and (3) the measure of damages for loss of

the unextractable limestone is the replacement cost of the limestone. While Affiliated has since filed its own Motion for Summary Judgment,[1] the instant Order is limited to Plaintiff's Motion, which is DENIED.

## Discussion.

The case is at a critical juncture. A coverage dispute that was originally in the $2.5M range has mushroomed into claims for more than $17M in losses. Both sides face downsides in terms of risk and few of the issues raised by either party appear amenable to resolution on summary judgment. The issues unamenable to summary disposition include the 7250 Allegheny Drive question (i.e., whether the quarry is a "Named" or "Unnamed" Location under the Policy)[2] and the question of whether the landslide or Continental's negligent maintenance at the site caused the instability. Both are fact-driven, and genuine disputes are apparent on the record. Further, Affiliated's attempt in its Motion for Summary Judgment to parse the physical damage caused by the slide from the "damage" caused by regulatory entities' decision to shut the Quarry down and to blame the instability, and the landslide itself, on Continental's poor management and safety

---

[1] In its Motion for Summary Judgment, Affiliated argues that (1) the Quarry is an "Unnamed Location" as that term is defined in the Policy, excluding coverage for earth movement; (2) the Quarry is "land" under the Policy such that damage to it is not covered regardless of whether the Quarry is a named location or not; (3) the un-mined limestone in the Quarry is also "land . . . or a substance in or on land" and not covered under the Policy or, in the alternative, that there is no coverage under the Policy for un-mined limestone because it has not been physically damaged; and (4) Plaintiff's claim for bad faith fails as a matter of law because Affiliated's interpretation of the Policy is reasonable.

[2] Coverage for earth movement does not extend to "Unnamed Locations" or locations unnamed through "Errors and Omissions." See Policy § C.1.b (Doc. 55-6, p. 13 of 39).

operations appear similarly ill-suited for resolution on summary judgment. The former relies on a hypertechnical reading of Policy language that will be construed against the insurer as a matter of law and the latter is rife with factual disputes likely resolvable only by a battle of the experts.

That said, the questions that may be answered at this juncture are Continental's rather novel assertion that the "millions of tons" of unextracted Pikeview Quarry limestone are "personal" rather than "real" property under the Policy, and that their loss should be compensated at "replacement cost" under the General Conditions section of the Policy (Policy § G). The assertion requires an exceedingly strained reading of the Policy,[3] and one that ultimately begs the land exclusion question of whether unextracted limestone, even if "personal property" or "raw materials" under the Policy, is nevertheless excludable "land . . . or substance in land." Even assuming for the sake of argument that

---

[3] Specifically, Continental reasons as follows:

- the Policy defines "Personal property" to include "Raw materials and Stock" (Policy, § B.2);
- "Stock in Process" is "raw materials or stock" that has "undergone any aging, seasoning, mechanical or other process or manufacture, but which is not finished goods" (§ H);
- Affiliated covered blasted limestone as "Stock in Process";
- therefore unblasted limestone is "Raw Materials."

Continental makes this argument notwithstanding the fact that the Policy defines "Raw Materials" to mean materials "in the state in which the Insured *receives* them for conversion by the Insured into finished goods." (Emphasis mine). While it seems clear that Continental owns the unextracted Pikeview Quarry limestone and does not "receive" it from anywhere, Continental elides the distinction by asserting it "received" the unextracted limestone for conversion into finished goods in 1974, when it purchased the Quarry.

unextracted Pikeview Quarry limeston is "personal property" under the Policy not subject to the land exclusion, Continental's assertion that it must be covered at the open-market "replacement cost" value for limestone that has already been extracted and converted for use in final product is untenable. The Policy values raw materials at replacement cost only to the extent they are "raw materials, supplies, and other merchandise not manufactured by the Insured." The Pikeview Quarry limestone, even under Continental's own view of the facts, is "raw material" owned and supplied/manufactured "by the Insured," not by anyone else, so it does not fall within the "replacement cost" valuation provision of the Policy. The "replacement" value for Continental's unextracted limestone, if anything, would be the value of another quarry, or, at a minimum, the value of open-market extracted limestone *less* the costs of extracting it, "seasoning" or "manufacturing" it for conversion into finished goods, and delivering it to Contintental. Continental's construction of the Policy's "personal property"/"raw materials"/"replacement value" provisions are unavailing and its request that I enter partial summary judgment in its favor on those issues is denied.

Finally, and while I leave consideration of whether the Quarry is "land" within the meaning of the Policy's land exclusion for determination in the context of Affiliated's Motion for Summary Judgment, I offer the following observations. Continental is likely correct that the quarry and quarry benches are engineered improvements on land rather than "land" within the meaning of the Policy's land exclusion. The distinction is irrelevant to Continental's claim for the replacement value of the unextracted limestone

5

however and I therefore decline to answer the "land" or "improvements on land" question posed by Plaintiffs in their Motion for Partial Summary Judgment. To the extent Affiliated is denying claims for costs related to repairs or stabilization of the benches under the land exclusion, Continental has the better side of that argument.

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment (Doc. 49) is DENIED. Specifically, Plaintiff's request that I enter partial summary judgment in its favor on the question of whether the Pikeview Quarry is an engineered improvement to real property and not "land" within the meaning of that term in the Policy is DENIED, with the understanding that the question will be analyzed in greater context in conjunction with Affiliated's pending Motion for Summary Judgment. Plaintiff's request for partial summary judgment and a ruling that unextracted Quarry limestone is "Personal Property," and specifically "Raw Materials," as that term is used in the Policy is DENIED on its merits, as is Plaintiff's request for a determination that the measure of damages for the loss of unextractable limestone is the replacement value of the limestone.

Dated September 25, 2012.

                                         **s/John L. Kane**
                                         SENIOR U.S. DISTRICT JUDGE